IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **BRIAN ANTHONY GONZALEZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. V-07-46 |
| **KLEBERG COUNTY, TEXAS and** § | |
| **EDWARD MATA, SHERIFF,** § | |
| **KLEBERG COUNTY, TEXAS** § | |
| § | |
| **Defendants.** § | |

## MEMORANDUM & ORDER

Pending before the Court is the Defendant, Kleberg County's 12(b)(6) Motion to Dismiss (Dkt. #9). After considering the motion, the parties' arguments, and applicable law, the Court is of the opinion the motion should be GRANTED in part.

## Factual Background

Plaintiff sued Kleberg County and Kleberg County Sheriff's Department for sex discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*., after a male and female supervisor made allegedly discriminatory comments to him in front of co-workers. He also alleges he was retaliated against after complaining about the comments, and forced to resign based on evidence that he had falsely represented himself as an officer of Kleberg County Sheriff's Department.

Kleberg County maintains that Plaintiff has not stated a claim upon which relief can be granted. The facts introduced by Plaintiff, at best, show that Plaintiff was harassed not because of his sex, but because of his sexual orientation, which is not covered by Title VII. Further, Kleberg County asserts that, even if Plaintiff has established a *prima facie* case of sexual harassment, the

comments were not sufficiently severe or pervasive to create a hostile work environment under Title VII.

Plaintiff was employed as a Dispatcher by Kleberg County from August 12, 2006 to November 3, 2006, approximately three months. Plaintiff worked under the direct supervision of Yvonne Barbour, Dispatch Supervisor. Ms. Barbour reported to Chief Deputy, Guillermo Vera, who reported to Defendant, Edward Mata, Sheriff of Kleberg County. Plaintiff alleged the harassment began around August 25, 2006 when he was assigned to work the day shift with Ms. Barbour and Mr. Vera. During the shift, both Ms. Barbour and Mr. Vera began making sexual remarks to Plaintiff such as "queer bait," "fruit loop sucker," and "fruitcake." These remarks were not made to other male employees. The remarks continued on a daily basis and were made in the presence of Plaintiff's co-workers. On one particular occasion, Mr. Vera, in the presence of Plaintiff's co-workers, referred to an object laying on a desk in the Dispatcher's office as lipstick that Plaintiff used for his "trans[g]ender nights." Mr. Vera and other co-workers laughed at Plaintiff.

On November 3, 2006, Plaintiff was called into a meeting with Mr. Vera, Ms. Barbour and Captain Sam Garcia. Mr. Vera informed Plaintiff that the Kleberg County Sheriff's Department had received a letter from the Bishop Police Department alleging that Plaintiff had identified himself as an officer of the Kleberg County Sheriff's Department in order to obtain information about a friend who had previously been arrested by the Bishop Police Department. This same letter alleged that Plaintiff was residing at this friend's house and selling drugs out of the residence. The county officials also stated they had an audio recording of the telephone conversation in which Plaintiff identified himself as an officer of the Sheriff's Department, although that audio recording was never played for Plaintiff.

Mr. Vera gave Plaintiff the option to quit voluntarily or be terminated. Plaintiff denied ever representing himself as an officer of the Kleberg County Sheriff's Department. Plaintiff claimed he repeatedly asked Ms. Barbour and Mr. Vera to stop making comments, and instead of taking action to stop the behavior, they just laughed and made a joke of him. He maintained his work as a Dispatcher was satisfactory, and he would have continued his employment had the hostile work environment caused by Ms. Barbour's and Mr. Vera's behavior not caused him to quit on November 3, 2006.

**A.     Standard of Review**

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in his favor. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.* at 1974; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 2007 WL 4465124, *1 (5th Cir. 2007).

**B.     Amended Complaint**

As a preliminary matter, Kleberg County moves to strike Plaintiff's Amended Complaint because he did not seek leave of court or get the consent of Kleberg County, in violation of Federal Rule of Civil Procedure 15(a). The amended complaint substitutes Sheriff Mata in place of Kleberg County Sheriff's Department and presents several new factual allegations.

Rule 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted). A district court must possess a "substantial reason" to deny a request for leave to amend, *id.*, but "leave to amend is by no means automatic." *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). In this case, the Court will consider Plaintiff's Amended Complaint, despite his noncompliance with Rule 15(a). Had the Plaintiff properly moved

to amend his complaint, the Court would likely have granted the motion for the following reasons: This litigation is still in its infancy, this is Plaintiff's first amended complaint, the amended complaint poses no prejudice to Defendant as it essentially pleads the same causes of actions, and allowing the amendment serves the interests of judicial efficiency because it will not be necessary to permit Plaintiff to amend his complaint after the ruling on this motion to dismiss. Thus, the Court will consider Plaintiff's Amended Complaint (Dkt. #15) as the operative document for its analysis.

As such, the Court notes that Kleberg County Sheriff's Department was removed as a Defendant in Plaintiff's Amended Complaint, an implicit recognition that the Sheriff's Department does not have capacity to be sued. *Darby v. Pasadena Police Dep't.,* 939 F.2d 311, 313 (5th Cir. 1991). Defendant's argument in this regard is, therefore, moot based on Plaintiff's First Amended Complaint.

**C.     Sexual Harassment**

Plaintiff asserts sexual harassment by both a male and female supervisor created a hostile work environment in violation of Title VII.[1] To make a *prima facie* showing of sexual harassment by a superior, a claimant must satisfy the following four elements: (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the harassment affected a term, condition, or privilege of employment. *Watts*

---

[1] Although Plaintiff sets forth claims for sexual discrimination and sexual harassment, the factual allegations specified in his amended complaint tend to support only the theory of sexual harassment. Assuming *arguendo* that Plaintiff intended to allege a claim for sexual discrimination, this claim would still fail. To show a *prima facie* case of sex discrimination, a plaintiff must establish that he: (1) is a member of a protected class; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was treated less favorably that other similarly situated employees, outside the protected class. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Plaintiff has not presented any facts which support the fourth element–that similarly situated females were treated more favorably than him.

5

*v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). Title VII's prohibition against harassment based on "sex" does not extend to discrimination based on sexual orientation. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005); *see also Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979).

Nonetheless, same-sex sexual harassment can come within the purview of Title VII when the harassment is based on sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998). Under Title VII, the term "sex" refers to a protected class delineated by gender. *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1263 (10th Cir. 2005); *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000). The Supreme Court stressed that, like all plaintiffs alleging sexual harassment, the employee must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale*, 523 U.S. at 81 (internal quotation marks and alterations omitted). The critical inquiry, thus, is whether members of one sex are subjected to disadvantageous terms or conditions of employment to which members of the opposite sex are not. *Id.* at 80.

Defendant contests the third element of Plaintiff's *prima facie* case— that the harassment complained of was based on sex. The Court will address each harasser separately. As to Mr. Vera, there are three methods by which a plaintiff alleging same-sex sexual harassment can show that he was harassed based on sex: (1) he can show that the alleged harasser made explicit or implicit proposals of sexual activity and provide credible evidence that the harasser was homosexual; (2) he can demonstrate that the harasser was motivated by general hostility to the presence of males in the workplace; or (3) he may offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. *Id.* at 80–81; *La Day v. Catalyst Tech., Inc.,* 302

F.3d 474, 478 (5th Cir. 2002). Specifically, two types of evidence will likely show that the harasser had homosexual interest in the claimant, including "evidence suggesting that the harasser intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest" and "the alleged harasser made same-sex sexual advances to others." *Id.* at 480 (noting "[a] harasser may well make sexually demeaning remarks and putdowns to the plaintiff for sex-neutral reasons . . . but he is far less likely to make sexual *advances* without regard to sex").

Drawing all inferences in favor of Plaintiff's allegations, he has not plead sufficient facts to make out a claim for sexual harassment based on Mr. Vera's comments. Specifically, there is no evidence that Mr. Vera was homosexual or motivated by a sexual desire toward Plaintiff. Plaintiff also concedes that these insults were not made to other male employees, which precludes an inference that Mr. Vera held a general hostility toward males at the Dispatcher's office. Finally, Plaintiff cannot satisfy the third evidentiary route because he has not offered any direct, comparative evidence of how Mr. Vera treated males and females in a mixed-sex workplace. Thus, there is no plausible factual scenario which would support Plaintiff's allegation that he was subjected to same-sex sexual harassment based on his sex.

In addition to the lack of factual support presented, the specific facts Plaintiff does present only support the conclusion that he was harassed because of perceptions about his sexual orientation. Plaintiff alleged that Mr. Vera referred to him as "queer bait," "fruit loop sucker" and "fruitcake" and recalls a single incident when Mr. Vera referred to an object on a desk as lipstick for Plaintiff's "trans[g]ender nights." The comments, while offensive and inappropriate, are clearly targeted at Plaintiff's perceived sexuality rather than the fact that he is male. None of these statements, even

7

considered in a light most favorable to the Plaintiff, indicate that he was exposed to conditions of employment different from members of the opposite sex, as the *Oncale* Court requires. *Oncale,* 523 U.S. at 81 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is only directed at "*discriminat[ion]* . . . because of . . . sex."). The Court concludes that Plaintiff's claim of sexual harassment based on these remarks is a claim for sexual orientation harassment, which is not actionable under Title VII.

For the same reasons, Plaintiff's harassment claim based on the same comments made by Ms. Barbour fails. Plaintiff is unable to show any explicit proposals of sexual activity by Ms. Barbour, and her alleged comments cannot, even liberally construed, be characterized as implicit proposals of sexual activity, which often lead to an inference of harassment based on sex. *Id.* at 80 (finding it easy to infer opposite sex harassment when explicit or implicit proposals of sexual activity occur because one can assume these proposals would not be made to someone of the same sex). Moreover, there is no evidence that Ms. Barbour was crude or inappropriate with other males employees, indicating she did not disapprove of males generally.

While Plaintiff continually characterizes the comments as those of a "sexual nature," conclusory allegations do not satisfy the Court that these comments were anything other than inappropriate remarks related to the perceptions about Plaintiff's sexual orientation.[2] Assuming all of Plaintiff's allegations are true, he has failed to allege an essential element of his claim, namely sexual harassment because of his sex. Therefore, the Court will dismiss Plaintiff's sexual harassment/sex discrimination claims.

---

[2] In fact, Plaintiff, in his Original Complaint, states that Ms. Barbour and Mr. Vera "made it a daily habit to tease Plaintiff in front of his co-workers *about his sexuality*." *See* Dkt. #1, p. 4 (emphasis added).

**D.      Retaliation**

Plaintiff maintains he was retaliated against because he objected to the offensive remarks of his supervisors.   A plaintiff establishes a *prima facie* case for unlawful retaliation by proving: (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir.1996); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996). An employee has engaged in activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII ,or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.   42 U.S.C. § 2000e-3(a); *Grimes*, 102 F.3d at 140; *Long*, 88 F.3d at 304.  The employee need only show that he had a "reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (citing *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)).

Plaintiff alleged that he repeatedly asked Mr. Vera and Ms. Barbour to stop their remarks, but instead of taking action, they made a joke of Plaintiff.   Soon thereafter, Ms. Barbour and Mr. Vera were involved in the meeting in which Plaintiff was given the option to resign or be terminated. While Defendants may be able to challenge the adverse employment action or the causal link, Plaintiff has sufficiently stated a cause of action for retaliation to survive a motion to dismiss because he reasonably believed that he was opposing an unlawful employment practice under Title VII.

**Conclusion**

Based on the foregoing, the Court hereby rules as follows:

1. Defendant's Motion to Dismiss (Dkt. #9) is **GRANTED** to the extent it dismisses Plaintiff's Title VII sexual harassment/sex discrimination claims;

2. All of Plaintiff's claims against Kleberg County Sheriff's Department are hereby **DISMISSED** as moot; and

3. Plaintiff's Amended Complaint (Dkt. #15) shall now be considered officially filed among the papers of this cause.

It is so ORDERED

Signed this 22nd day of January, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE